## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANNETTE E. HESS,** | : | **CIVIL ACTION NO. 3:12-CV-1907** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN, ACTING** | : | |
| **COMMISSIONER OF SOCIAL** | : | |
| **SECURITY ADMINISTRATION,**[1] | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM

The above-captioned action seeks review of the Commissioner of Social
Security's ("Commissioner") decision denying plaintiff Annette E. Hess's ("Hess")
claim for disability insurance benefits and supplemental security income.  Presently
before the court is Hess's appeal from an administrative law judge's ("ALJ")
decision upholding the denial of social security benefits.  (Doc. 1).  For the reasons
that follow, the court will remand the above-captioned matter to the ALJ for further
proceedings.

---

[1] Michael J. Astrue was the Commissioner of Social Security when the instant
action was filed against him in his official capacity.  Since then, Astrue left his
position as Commissioner, and Carolyn W. Colvin became the Acting Commissioner
of Social Security on February 14, 2013.  See Official Social Security Website, http://
www.socialsecurity.gov/pressoffice/factsheets/colvin.htm (last accessed March 5,
2014).  Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is
substituted for Michael J. Astrue as the defendant in this action.  Fed. R. Civ. P.
25(d) ("An action does not abate when a public officer who is a party in an official
capacity dies, resigns, or otherwise ceases to hold office while the action is pending.
The officer's successor is automatically substituted as a party.").

I.     **Factual Background and Procedural History**

Plaintiff Annette Hess was born on September 25, 1960, and she was 48 years old at the alleged disability onset date.[2]  (Doc. 8-2 at 20, 34).  She is divorced and lives with her young grandson in a rented mobile home.  (Id. at 34).  She has an 11th grade education.  (Id. at 20; see also Doc. 9 at 2).

On May 18, 2009, Hess protectively[3] filed an initial application for disability insurance benefits ("DIB")[4] and supplemental security income ("SSI")[5] for

_____

[2] At all times relevant to this matter, Hess was considered a "younger individual," whose age would not seriously impact her ability to adjust to other work.  (Doc. 8-2 at 20); see 20 C.F.R. §§ 404.1563(c), 416.963(c); see also 20 C.F.R., pt. 404, subpt. P, app. 2, § 201(h)(1) ("The term younger individual is used to denote an individual 18 through 49.").

[3] Protective filing refers to the first time an individual contacts the Social Security Administration to file a claim for benefits.  A protective filing allows an individual to have an earlier application date than the date the application is signed.

[4] Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes.  See 42 U.S.C. §§ 415(a), 416(i)(1).  The last date that an individual meets the requirements of being insured is commonly referred to as the "date last insured."  See id. § 416(i)(2).  The ALJ determined that Hess met the insured status requirements through June 30, 2012.  (Doc. 8-2 at 12).  In order to establish entitlement to disability insurance benefits, Hess is required to establish that she suffered from a disability on or before June 30, 2012.  20 C.F.R. §404.131; see also Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).

[5] Supplemental security income is a federal income supplement program funded by general tax revenues, not social security taxes.  See 42 U.S.C. § 1381.  It is designed to help the aged, blind, or disabled individuals who have little or no income.  See id. § 1381a.  Insured status is irrelevant to an individual's eligibility for supplemental security income benefits.  See id. § 1382.

disability since December 31, 2008.  (Doc. 8-2 at 12).[6]  The Commissioner denied her

initial application for social security benefits on December 18, 2009.  (Id. at 12).

Hess subsequently filed a written request for a hearing.  (Id.)  On February 8, 2011,

Hess appeared and testified before an ALJ at a hearing held in Harrisburg,

Pennsylvania.  (Id.)

Hess alleges disability based upon major depression, attention deficit

disorder ("ADD"), bipolar disorder, generalized anxiety disorder, social phobia,

panic disorder, and chronic mood disorder, as well as fibromyalgia and cervical disc

disease.  (Id. at 31-32).  At the hearing, Hess testified that she has been dealing with

depression since the age of ten and can no longer concentrate or focus.  (Id. at 35).

She also has difficulty with her grip, standing up, and walking as a result of

fibromyalgia.  (Id. at 31-32).  With respect to her work history, Hess testified that she

previously worked as a fast food worker and waitress.  (Id. at 20, 40-44).  At the time

of the hearing, Hess was working part-time as a short-order cook at Johnnie's

Diner.  (Id. at 44-46).  However, Hess estimated that she misses work about three or

four times a month due to depression.  (Id. at 49-50).

On a day-to-day basis, Hess does not have significant problems with her

personal hygiene or doing chores in her home.  (Id. at 51-52, 59).  Hess also testified

that she is the primary caregiver for her grandson and takes him out to the movies

---

[6] Citations to the administrative record (Doc. 8) reflect the docket number
followed by the specific Bates-stamped page number on the bottom right-hand
corner of each page of the record.

and his sporting events.  (Id. at 52, 54-56).  Hess's neighbor usually picks her

grandson up after school and helps him with his homework, (id. at 51-52, 54-55), and

her grandson occasionally stays with her parents for the weekend or his mother for

one or two days.  (Id. at 50-51, 53).  Although Hess stated that she avoids social

situations, Hess visits with her parents once a week and her cousin about once a

month.  (Id. at 53, 58-60).

On June 3, 2011, the ALJ issued a decision denying Hess's claim for social

security benefits.  (See id. at 12-22).  Hess appealed the ALJ's decision to the

Appeals Counsel on June 29, 2011, (see id. at 7-8), and the Appeals Counsel denied

the appeal on August 16, 2012.  (See id. at 1-6).

On September 24, 2012, Hess, through counsel, filed a complaint in the

instant action to appeal the final administrative decision denying her application

for social security benefits pursuant to 42 U.S.C. §1383(c)(3).[7]  (Doc. 1).  On

November 20, 2012, the Commissioner filed an answer (Doc. 7) to Hess's complaint

---

[7] "The final determination of the Commissioner of Social Security after a
hearing under paragraph (1) shall be subject to judicial review as provided in
section 405(g) of this title to the same extent as the Commissioner's final
determinations under section 405 of this title."  42 U.S.C. §1383(c)(3).  "Any
individual, after any final decision of the Commissioner of Social Security made
after a hearing to which he was a party, irrespective of the amount in controversy,
may obtain a review of such decision by a civil action commenced within sixty days
after the mailing to him of notice of such decision . . . . Such action shall be brought
in the district court of the United States for the judicial district in which the
plaintiff resides, or has his principal place of business."  Id. § 405(g).  Under the
Local Rules for the U.S. District Court for the Middle District of Pennsylvania, "[a]
civil action brought to review a decision of the Social Security Administration
denying a claim for social security disability benefits" is "adjudicated as an appeal."
L.R. 83.40.1.

and also provided the administrative record for the court's review.  (Doc. 8).  Upon

further briefing by the parties, the instant action is ripe for disposition.  (See Docs.

9, 10, 11).

**II.    Standard of Review**

In reviewing a social security appeal, the court may conduct a plenary review

of all legal issues decided by the Commissioner.  See Poulos v. Comm'r of Soc. Sec.,

474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d

429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).  The

court's review of findings of fact pursuant to 42 U.S.C. § 405(g), however, is limited

to determining whether the findings are supported by "substantial evidence."  42

U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008);

Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); Brown v. Bowen, 845 F.2d 1211, 1213

(3d Cir. 1988).  Factual findings which are supported by substantial evidence must

be upheld.  42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir.

2005) (stating that courts may not weigh the evidence or substitute its own

conclusion for those of the fact-finder); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d

Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence,

we are bound by those findings, even if we would have decided the factual inquiry

differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981) ("Findings of fact by

the Secretary must be accepted as conclusive by a reviewing court if supported by

substantial evidence.").

Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 564-65 (1988) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson, 529 F.3d at 200; Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  The Third Circuit has described substantial evidence as more than a mere scintilla, but substantial evidence may be less than a preponderance of the evidence.  Brown, 845 F.2d at 1213.  In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971).  "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).  The ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000); Cotter, 642 F.2d at 706-707.  Therefore, the court must scrutinize the record as a

6

whole on appeal.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

### III.  Sequential Evaluation Process

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is incapable of engaging in "substantial gainful activity" when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A).

An ALJ utilizes a five-step sequential evaluation process in assessing DIB and SSI claims.  20 C.F.R. §§ 404.1520(a), 416.920(a).  This process requires the ALJ to consider, in sequence, whether a plaintiff (1) is engaging in "substantial gainful activity,"[8] (2) has an impairment, or combination of impairments, that is "severe,"[9]

---

[8] "Substantial gainful activity" is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510, 416.910.  If the plaintiff is engaging in "substantial gainful activity," the plaintiff is not disabled and the court need not proceed further with the sequential evaluation.  Id. §§ 404.1520(b), 416.920(b).

[9] A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic

(3) has an impairment, or combination of impairments, that meets or equals the

requirements of a "listed impairment,"[10] (4) has the "residual functional capacity"

to return to his or her past work,[11] and (5) if not, whether he or she can perform

other work in the national economy.  Id. §§ 404.1520(a), 416.920(a).  The burden of

proof rests upon the plaintiff through the first four steps, and if the plaintiff is

successful, then the burden of proof shifts to the Commissioner on the fifth and

final step.  Mason, 994 F.2d at 1064.

Prior to addressing step four, the ALJ must determine the plaintiff's residual

functional capacity.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Residual functional

---

physical work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, stoop, crouch, and handle.  Id. §§ 404.1545(b), 916.945(b).  An individual's basic mental or non-exertional activities include the ability to understand, carry out and remember simple instructions, and to respond appropriately to supervision, coworkers and work pressures in a work setting.  Id. §§ 404.1545(c), 916.945(c).  If the plaintiff does not have any severe impairment, or a combination of impairments which is severe, that has lasted or is expected to last for a continuous period of at least twelve (12) months, the plaintiff is not disabled and the sequential evaluation ends at this step.  Id. §§ 404.1509, 404.1520(c), 416.920(c).  Regardless of the ALJ's conclusion, all medically determinable impairments, whether severe or non-severe, are considered in the subsequent steps of the sequential evaluation process.  Id. §§ 404.1523, 404.1545(a)(2), 416.923, 416.945(a)(2).

[10] A "listed impairment" is one that appears on the Commissioner's Listing of Impairments, which is "a list of impairments presumed severe enough to preclude any gainful work."  Sullivan v. Zebley, 493 U.S. 521, 525 (1990); see 20 C.F.R. pt. 404, subpt. P, app. 1.  If the plaintiff has an impairment, or combination of impairments, that meets or equals a listed impairment, the plaintiff is disabled.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Otherwise, the sequential evaluation proceeds to the next step.  Id. §§ 404.1520(e), 416.920(e).

[11] If the plaintiff has the residual functional capacity to do his or her past relevant work, the plaintiff is not disabled and the sequential evaluation ends.  Id. §§ 404.1520(f), 416.920(f).

capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, meaning a full-time schedule such as eight hours a day, five days per week.  See SSR 96–8p, 61 Fed. Reg. 34475 (July 2, 1996).[12]  The ALJ's assessment of residual functional capacity must include a discussion of the individual's abilities.  20 C.F.R. §§ 404.1545, 416.945; SSR 96–8p; see Fargnoli, 247 F.3d at 40 (defining residual functional capacity as that which an individual is still able to do despite the limitations caused by his or her impairments).

In the case *sub judice*, the ALJ applied the sequential evaluation process and, at step one, concluded that Hess's work as a part-time, short-order cook after the alleged disability onset date does not rise to the level of substantial gainful activity. (Doc. 8-2 at 14).  At step two, the ALJ found that Hess has the following severe impairments: bipolar disorder, cyclothymic disorder, major depressive disorder, generalized anxiety disorder, social phobia, panic disorder, and cocaine abuse.[13] (Id.)  At step three, the ALJ held that Hess's impairments do not separately or in

---

[12] Social Security Rulings ("SSR") constitute the Social Security Administration's interpretations of the Social Security Act and its own regulations. See Molina v. Astrue, 674 F.3d 1104, 1113 n. 5 (9th Cir. 2012); Lauer v. Apfel, 169 F.3d 489, 492 (7th Cir. 1999).  SSRs do not have the force of law; nevertheless, once published, they are binding on the Social Security Administration.  Heckler v. Edwards, 465 U.S. 870, 873 n. 3 (1984); Boone v. Barnhart, 353 F.3d 203, 210 n. 16 (3d Cir. 2003); 20 C.F.R. § 402.35(b)(1).

[13] The ALJ noted that Hess was also diagnosed with cervical degenerative disc disease, fibromyalgia, ADD, and obesity.  (Doc. 8-2 at 15).  However, the ALJ concluded that these impairments have only a minimal effect on Hess's ability to do basic work activities and are therefore non-severe impairments.  (Id.)

combination meet or equal a listed impairment.  Specifically, the ALJ found that Hess does not satisfy the "paragraph B" and "paragraph C" criteria of listings 12.04 for affective disorders and 12.06 for anxiety-related disorders.  (Id. at 15).  At step four, the ALJ concluded that Hess can no longer perform her prior relevant work.  (Id. at 20).  However, Hess retains the residual functional capacity to perform a full range of unskilled work at all exertional levels, with the following non-exertional limitations: (1) Hess is limited to work where she is not required to work in coordination with other individuals or teamwork; and (2) Hess is limited to occasional contact with the public, supervisors, and co-workers.  (Id. at 16-20).  Based on her residual functional capacity and the testimony of a vocational expert, the ALJ determined at step five that Hess can perform light, unskilled work, such as housekeeping, conveyor line bakery worker, or bottling line attendant, and that there are a significant number of such jobs in the local and national economies.  (Id. at 21).  As a result of the five-step sequential evaluation process, the ALJ concluded that Hess has not been disabled since December 31, 2008 under the Social Security Act.  (Id.)

## IV.   **Discussion**

In the instant action, Hess requests that the court reverse or remand her claims to the ALJ for further proceedings for three main reasons.  First, the ALJ erred in finding that Hess's mental impairments do not meet or equal any listed impairments.  (Doc. 9 at 10-13).  Second, substantial evidence does not support the ALJ's decision concerning the listed impairments and residual functional capacity

because the ALJ improperly discounted the medical opinions of treating and non-treating examining sources.  (Id. at 13-16).  Third, the ALJ's assessment of residual functional capacity failed to consider relevant and probative evidence regarding an excessive absentee rate.  (Id. at 16-17).  The court will address each argument *seriatim*.

### A.    Listings for Mental Impairments

At step three of the sequential evaluation process, the ALJ must determine whether a plaintiff's alleged impairment meets or equals any listed impairment on the Commissioner's Listings of Impairments.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); see 20 C.F.R. pt. 404, subpt. P, app. 1.  The purpose of the Listings is to describe impairments "severe enough to prevent a person from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525(a); see also Sullivan v. Zebley, 493 U.S. 521, 532 (1990); Knepp, 204 F.3d at 85.  The Listings operate as a presumption of disability without further inquiry as to whether the plaintiff can actually perform his or her prior work or other available work.  Zebley, 493 U.S. at 532.  To satisfy a listed impairment, the plaintiff has the burden of presenting "medical findings equal in severity to *all* the criteria for the one most similar listed impairment."  Id. at 531; Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992).

Hess argues that the ALJ erred by finding that Hess's mental impairments do not meet listed impairments 12.04 for affective disorders and 12.06 for anxiety-related disorders.  (Doc. 9 at 10-13).  Listings 12.04 and 12.06 each have paragraph

"A", "B", and "C" criteria.  <u>See</u> 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.04, 12.06.  An

impairment meets listing 12.04 when the requirements in "paragraph A" and

"paragraph B" are satisfied, or when the requirements in "paragraph C" are

satisfied.  <u>Id.</u> § 12.04.  An impairment meets listing 12.06 when the criteria in both

"paragraph A" and "paragraph B" are satisfied, or when the criteria in both

"paragraph B" and "paragraph C" are satisfied.  <u>Id.</u> § 12.06.  The court need not

address the "paragraph A" requirements because substantial evidence supports the

ALJ's conclusion that Hess fails to meet the "paragraph B" and "paragraph C"

requirements of both listings.

     The "paragraph B" criteria are identical for listings 12.04 and 12.06.  To

satisfy the "paragraph B" criteria, the mental impairments must result in at least

two of the following: (1) marked[14] restriction of activities of daily living; (2) marked

difficulties in maintaining social functioning; (3) marked difficulties in maintaining

concentration, persistence, or pace; or (4) repeated episodes of decompensation,

each for an extended duration.[15]  <u>Id.</u> §§ 12.04, 12.06.  For listing 12.04, the

"paragraph C" criteria require that a plaintiff to demonstrate one of the following:

(1) repeated episodes of decompensation for an extended duration, (2) a residual

disease process that has resulted in such marginal adjustment that a minimal

---

[14] A "marked" limitations means more than moderate, but less than extreme.
20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(C).

[15] "Repeated episodes of decompensation, each for an extended duration"
means three episodes within one year, or an average of once every four months,
each lasting for at least two weeks.  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(C)(4).

increase in mental demand or change in environment would be predicted to cause

decompensation, or (3) a current history of inability to function outside a highly

supportive living arrangement for one or more years with an indication of

continued need for such an arrangement.  Id. § 12.04.  The "paragraph C"

limitations of listing 12.06 require that the plaintiff have a complete inability to

function independently outside the area of her home.  Id. § 12.06.

The ALJ held that Hess's mental impairments do not satisfy the "paragraph

B" and "paragraph C" requirements for both listings 12.04 and 12.06.  (Doc. 8-2 at

15-16).  In so finding, the ALJ relied on her review of Hess's written submissions

and testimony regarding her activities as well as objective medical evidence.  (Id. at

15-20).  The court notes that the administrative record in this case is 412 pages in

length, primarily consisting of medical records.  (See Doc. 8).  The ALJ did an

adequate job of reviewing Hess's medical history and vocational background in her

decision.

With respect to the "paragraph B" criteria, the ALJ found that Hess's mental

impairments only cause mild to moderate limitations.  (Doc. 8-2 at 15-16).  First, the

ALJ determined that Hess has mild restrictions in daily living activities.  Although

she needs reminders to take care of personal needs and household chores, Hess

testified that she is able to prepare meals, do household chores, and run errands

and go shopping.  (Id. at 15).  She also raises her grandson alone and attends his

sporting events.  (Id.)

Second, the ALJ reasoned that Hess has moderate difficulties with social functioning because she can be short-tempered and irritable.  (Id.)  Hess does not go anywhere on a regular basis and has difficulty getting along with authority figures.  (Id.)  However, Hess testified that she has never been fired from a job because of problems getting along with others.  (Id.)  The ALJ also noted that Hess does not need supervision when she goes out and regularly spends time with her parents and cousin.  (Id.)

Third, with respect to concentration, persistence, and pace, the ALJ concluded that Hess has moderate difficulties because she has difficulty paying attention, following complicated instructions, and handling stress and changes in routine.  (Id.)  Her medical records indicate, however, that Hess has normal stream and content of thought, intact cognitive functions, and good memory.  (Id.)  The ALJ further observed that Hess maintained her attention and concentration at the hearing.  (Id.)

Finally, the ALJ found that Hess has not experienced any episodes of decompensation for an extended duration.  (Id. at 16).

Regarding the "paragraph C" criteria, the ALJ stated that there is no indication in the record that Hess has repeated and extended episodes of decompensation, a residual disease process, or a current history of one or more year's inability to function outside a highly supportive living arrangement to meet or equal listing 12.04.  (Id.)  Moreover, for listing 12.06, the evidence of record

clearly shows that Hess is not completely unable to function independently outside the area of her home.  (Id.)

In addition to Hess's testimony and written submissions, the ALJ relied on a psychiatric review technique form completed on December 17, 2009 by a state agency psychological consultant, Alex Siegel, Ph.D.  (Id. at 18).  Dr. Siegel determined that Hess has no restrictions in daily living activities, moderate difficulties in social functioning and concentration, persistence, and pace, and no repeated and extended episodes of decompensation.  (Id.)  The ALJ gave Dr. Siegel's opinions significant weight, except his opinion regarding daily living activities,[16] as consistent with and supported by the evidence of record.  (Id.)

Upon review of the record, including Hess's testimony and Dr. Siegel's medical opinions, the court finds that substantial evidence supports the ALJ's conclusion that Hess's mental impairments fail to meet or equal the "paragraph B" and "paragraph C" criteria of listings 12.04 and 12.06.

### B.   Weight of Medical Evidence

Hess contends, however, that the ALJ erred by disregarding the medical opinions of her treating and examining sources at steps three and four of the sequential evaluation process.  (Doc. 9 at 11-16).

---

[16] The ALJ discounted Dr. Siegel's opinion regarding daily living activities because the evidence of record indicates that Hess has mild restrictions in such activities.  (Doc. 8-2 at 18).  In actuality, Dr. Siegel specifically noted that Hess has mild restrictions in daily living activities, thus providing further support to the ALJ's conclusion.  (Doc. 8-8 at 344).

The Third Circuit Court of Appeals has set forth the standard for evaluating

the opinion of a treating medical source in <u>Morales v. Apfel</u>, 225 F.3d 310 (3d Cir.

2000).  The Third Circuit stated, in relevant part, as follows:

> A cardinal principle guiding disability eligibility determinations is that the
> ALJ accord treating physicians' reports great weight, especially "when their
> opinions reflect expert judgment based on a continuing observation of the
> patient's condition over a prolonged period of time" . . . . [T]he ALJ must
> consider the medical findings that support a treating physician's opinion that
> the claimant is disabled.  In choosing to reject the treating physician's
> assessment, an ALJ may not make "speculative inferences from medical
> reports" and may reject "a treating physician's opinion outright only on the
> basis of contradictory medical evidence" and not due to his or her own
> credibility judgments, speculation or lay opinion.

<u>Id.</u> at 317-18 (internal citations omitted).  The opinions of non-treating, examining

sources, however, are not entitled to special treatment.  An ALJ also need not defer

to a treating source's opinion about the ultimate issue of disability because that

determination is an administrative finding reserved to the Commissioner.  20 C.F.R.

§ 404.1527(d).

The social security regulations require an ALJ to evaluate every medical

opinion received.  <u>Id.</u> § 404.1527(c).  The opinion of a treating source may be

accorded *controlling* weight only when it is well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with other

substantial evidence in the case.  <u>Id.</u> § 404.1527(c)(2); SSR 96–2p, 56 Fed. Reg.

36,932, 36,936 (1991).  Likewise, an ALJ is not obligated to accept the testimony of a

plaintiff if it is not supported by the medical evidence.  An impairment, whether

physical or mental, must be established by "medical evidence consisting of signs,

symptoms, and laboratory findings," and not solely by the plaintiff's subjective statements.  20 C.F.R. §§ 404.1528(a), 404.1529(a).

When an ALJ does not give a treating source controlling weight, the ALJ should consider the following factors in assigning weight to medical opinions: (1) the length and frequency of treatment, (2) the nature and extent of the treatment relationship, (3) support from medical signs and laboratory findings, (4) consistency with the record as a whole, and (5) whether the medical source is a specialist.  Id. § 404.1527(c).

In the instant case, the ALJ considered the medical opinions of Hess's treating sources, Harvey Shapiro, M.D. and William Milroth M.D., and non-treating, examining source, Edward Yelinek, Ph.D.  Based on the conflicting medical opinion of the state agency psychologist, Dr. Siegel, and the evidence of record, the ALJ concluded that the medical opinions of Drs. Shapiro, Milroth, and Yelinek are not adequately supported by objective medical evidence.

Dr. Shapiro provided monthly psychiatric treatment to Hess beginning in May 2009.  (Doc. 9 at 11).  On February 7, 2011, Dr. Shapiro completed a medical impairment questionnaire in which he opined that Hess suffers from no restrictions in daily living activities, marked difficulties in social functioning and concentration, persistence, and pace, and extreme limitations regarding episodes of

decompensation.  (Doc. 8-2 at 19).  Dr. Shapiro also assigned Hess a GAF[17] score of

45 for the past year, which indicates a serious impairment in occupational and/or

social functioning.  (Id.)

      Contrary to Hess's assertions, the ALJ clearly explained why she gave limited

weight to Dr. Shapiro's opinions.  First, the ALJ discounted the GAF assessments

ranging from 61 to 45 because these assessments only reflect Hess's level of

functioning at one particular point in time.  (Id. at 17-19).  Second, the ALJ stated

that Dr. Shapiro's opinions are inconsistent with the evidence of record.  (Id. at 19).

Pursuant to social security regulations, a medical opinion is "inconsistent when it

conflicts with other evidence, contains an internal conflict, is ambiguous, or when

the medical evidence does not appear to be based on medically acceptable clinical

or laboratory diagnostic techniques."  20 C.F.R. § 404.1520b.  The ALJ noted that

Dr. Shapiro improperly premises his opinions upon Hess's subjective assertions

---

[17] The GAF score allows a medical source to indicate his judgment of a plaintiff's overall psychological, social, and occupational functioning in order to assess the plaintiff's mental impairments.  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 3-32 (4th ed. 1994).  A GAF score is set within a particular range if either the severity of symptoms or the level of functioning falls with that range.  Id.  A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning.  Id.  A GAF score of 51-60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning.  Id.  A GAF score of 61-70 represents some mild symptoms or difficulty in social, occupational, or school functioning, but generally functioning well with some meaningful interpersonal relationships.  Id.

regarding her symptoms rather than objective signs[18] or laboratory findings.[19]  (Doc. 8-2 at 19); see also 20 C.F.R. § 404.1528.  Therefore, the ALJ was not required to attribute controlling or even significant weight to Dr. Shapiro's opinions.

The ALJ also assigned limited weight to the opinions of Hess's primary care physician, Dr. Milroth, and consultative examining psychologist, Dr. Yelinek, for similar reasons.  (Doc. 8-2 at 18-19).  On November 5, 2010, Dr. Milroth completed a mental impairment questionnaire and assessed Hess as having only mild to moderate mental limitations and the aptitude to do unskilled, semi-skilled, or skilled work.  (Id. at 19).  Although his medical opinions support the ALJ's decision, the ALJ gave limited weight to Dr. Milroth's opinions for relying on Hess's subjective assertions and not objective observations.  (Id.)  Indeed, a review of the record demonstrates that, prior to offering his opinions, Dr. Milroth used no clinical or laboratory diagnostic techniques to evaluate Hess prior to offering his opinions.  (See, e.g., Doc. 8-7 at 277, 279, 283; Doc. 8-8 at 395-398).

---

[18] According to social security regulations, "[p]sychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception."  20 C.F.R. § 404.1528(b).  A medical opinion must demonstrate such signs by medically acceptable clinical diagnostic techniques and by observable facts that can be medically described and evaluated.  Id.

[19] "Laboratory findings are anatomical, pshysiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques," such as X-rays, chemical tests, and psychological tests.  20 C.F.R. § 404.1528(c).

On December 4, 2009, Dr. Yelinek assessed Hess's mental impairments as placing moderate limitations on her ability to understand, remember, and carry out simple instructions, marked limitations on the same abilities for detailed instructions and interacting with others, and extreme limitations in responding to work pressures. (Doc. 8-2 at 18).  Although Dr. Yelinek offered some objective observations from his examination, the ALJ reasoned that Dr. Yelinek's improper reliance on Hess's subjective assertions caused him to overestimate her limitations. (Id.)  The objective evidence of record clearly indicates that Hess was in fact working 25 hours per week and raising a young grandson alone.  (Id.)  Both of these responsibilities require abilities in the areas for which Dr. Yelinek assessed marked limitations.  (Id.)  For this reason, the ALJ discounted Dr. Yelinek's opinion.

The ALJ also considered Dr. Siegel's psychiatric review technique form and residual functional capacity assessment, in which Dr. Siegel opined that Hess has moderate limitations in understanding and memory, sustained concentration and persistence, social interactions, and adaptation.  (Id. at 18-19).  Similar to the psychiatric review technique form, the ALJ attributed significant weight to Dr. Siegel's opinions in the residual functional capacity assessment as consistent with and supported by the evidence of record.  (Id.)

The court concludes that the ALJ adequately evaluated all of the medical opinions in the record.  Because the ALJ determined that the evidence of record does not support the opinions of Drs. Shapiro, Milroth, and Yelinek, the ALJ properly assigned them limited weight in accordance with the applicable social

security regulations.  As such, the ALJ's reliance on state agency psychologist Dr.

Siegel's opinions in his psychiatric review and residual functional capacity

assessment was appropriate.  See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356,

362 (3d Cir. 2011) ("Having found that the [state agency physician's] report was

properly considered by the ALJ, we readily conclude that the ALJ's decision was

supported by substantial evidence.").  Our review of the administrative record as a

whole reveals that substantial evidence supports the decision of the Commissioner

at steps three and four of the sequential evaluation process.

### C.       Countervailing Evidence Regarding Residual Functional Capacity

Hess asserts that the court should remand the instant action to the ALJ for

failure to consider relevant and probative countervailing evidence regarding Hess's

residual functional capacity.  (Doc. 9 at 16-17).  As previously discussed, residual

functional capacity refers to the plaintiff's remaining ability to sustain work

activities in an ordinary work setting on a regular and continuing basis.  See SSR

96–8p.  Regular and continuing basis generally means full-time employment, such

as eight hours a day, five days per week or other similar schedule.  See id.  Hess

contends that the ALJ failed to consider all the evidence concerning her ability to

sustain such full-time employment without excessive absences.  (Doc. 9 at 16-17).

In making a residual functional capacity determination, the ALJ must

consider all medical and non-medical evidence in the record.  Burnett, 220 F.3d at

121-22.  Although the ALJ may weigh the credibility of evidence, he or she must

give some indication of the evidence which he or she rejects and the reasons for

discounting such evidence.  <u>Id.</u> at 121; <u>see</u> <u>Cotter</u>, 642 F.2d at 704 (holding that an

ALJ's finding of residual functional capacity must "be accompanied by a clear and

satisfactory explication of the basis on which it rests.").  "[A]n ALJ may not reject

pertinent or probative evidence without explanation."  <u>Johnson</u>, 529 F.3d at 204.

"[A]n explanation from the ALJ of the reason why probative evidence has been

rejected is required so that a reviewing court can determine whether the reasons

for rejection were improper."  <u>Cotter</u>, 642 F.2d at 706-07.  "In the absence of such an

indication, the reviewing court cannot tell if significant probative evidence was not

credited or simply ignored."  <u>Burnett</u>, 220 F.3d at 121 (quoting <u>Cotter</u>, 642 F.2d at

705).

In the instant matter, the ALJ found that Hess possesses the residual

functional capacity to perform a full range of work at all exertional levels.  (Doc. 8-2

at 16).  In making this finding, the court considered Hess's testimony that she is

absent from her part-time job a couple times per month and expects to call off work

more frequently in a full-time position.  (<u>Id.</u> at 17).  The ALJ concluded, however,

that Hess's testimony is not entirely credible to the extent it is inconsistent with the

residual functional capacity assessment.  (<u>Id.</u>)  Specifically, Hess testified that she

would work more hours if available, that she handles all her household chores, and

that she regularly engages in social activities with her parents and grandson.  (<u>Id.</u>)

The ALJ also examined the medical record and noted that, on November 5,

2010, Dr. Milroth opined that Hess was capable of part-time work and would be

expected to miss work twice a month.  (<u>Id.</u> at 19).  On February 7, 2011, Dr. Shapiro

also indicated that Hess would be expected to be absent from work more than three times per month.  (<u>Id.</u>)   The ALJ gave the opinions of Drs. Milroth and Shapiro limited weight because neither opinion is consistent with the evidence of record, including Hess's current daily activities.  (<u>Id.</u>)  The ALJ further explained that Dr. Shapiro bases his opinions upon Hess's subjective assertions rather than objective observations or evidence of record.  (<u>Id.</u>)  For example, both Drs. Milroth and Shapiro claim that Hess was not able to work between April and September 2009 without any explanation for these opinions.  (<u>Id.</u> at 18).  Notably, Dr. Shapiro indicated that he signed papers letting Hess off work from June 9, 2009 until September simply because "[Hess] doesn't really want to work there due to nasty female boss."  (Doc. 8-7 at 306).

Nevertheless, within two weeks of the hearing and prior to the ALJ's decision, Hess submitted a handwritten statement from Hess's employer, stating that Hess missed 52 days of work between May 2010 and December 2010, with an average of 6.5 days per month.  (Doc. 9 at 17; <u>see</u> Doc. 8-6 at 235-36).  The ALJ failed to mention the statement from Hess's employer in her administrative decision, nor did the ALJ include the statement on the exhibit list attached to the decision.  (Doc. 9 at 17; <u>see</u> Doc. 8-2 at 16-20, 23-26).

The statement from Hess's employer regarding her absentee rate is relevant to and probative of the social security benefits claims for several reasons.  First, as previously discussed, Hess bears the burden of showing that she is not able to sustain work on a full-time basis to qualify as disabled under the Social Security

Act.  See Mason, 994 F.2d at 1064.  Clearly, her employer's statement that Hess

missed almost one week each month from her part-time position refutes the ALJ's

conclusion that Hess can maintain full-time employment.[20]  See also 20 C.F.R.

§ 404.1529(c)(3) (stating that an ALJ will consider statements regarding a prior work

record in the disability analysis).  Second, the ALJ discounted Hess's testimony as

inconsistent with other evidence of record and therefore not credible.  (Doc. 8-2 at

17).  The statement of an uninterested third-party employer tends to corroborate

Hess's testimony and bolsters her credibility.[21]  See Burnett, 220 F.3d at 122

(holding that, because the ALJ determined that plaintiff's testimony is not credible

and the additional witnesses intend to bolster plaintiff's credibility, the ALJ must

address the testimony of the additional witnesses); Zuvich v. Astrue, No. 3:07CV796,

2008 WL 4401019, at *6-7 (M.D. Pa. Sept. 23, 2008) (finding that the ALJ should have

discussed his reasons for rejecting plaintiff's sister's statement because it was not

---

[20]  The Commissioner asserts that the statement is not reliable because
"Plaintiff relies on a handwritten note allegedly from her employer," and "this note
is not an official or reliable personnel record of Plaintiff's absences."  (Doc. 10 at 14-
15).  However, it is not the court's place to weigh the evidence; the court may
determine only whether the ALJ's decision was based on substantial evidence.  See
42 U.S.C. § 405(g); see also Johnson, 529 F.3d at 200; Rutherford, 399 F.3d at 554
(stating that courts may not weigh the evidence or substitute its own factual
findings in the ALJ's decision).

[21]  The Commissioner also argues that the statement from Hess's employer is
contrary to Plaintiff's own testimony.  (Doc. 10 at 14).  The court disagrees.  At the
hearing, Hess estimated that she missed three to four days of work per month on a
part-time schedule.  (Doc. 8-2 at 49).  Her employer's statement with a precise
number of absences between May 2010 and December 2010 clearly supports and
expands upon her testimony.

merely cumulative evidence when the ALJ declined to credit the similar opinion of plaintiff's psychiatrist). Finally, evidence of an excessive absentee rate also implicates the fifth and final step of the sequential disability evaluation process. During the hearing, the vocational expert testified that an absentee rate of two or three shifts per month would prevent Hess from maintaining full-time employment. (See Doc. 8-2 at 65). In the event that the excessive absentee rate precludes Hess from other employment in the national economy, Hess would be disabled as defined by the Social Security Act.

The court concludes that the ALJ's failure to discuss or explain her reasons for rejecting the statement from Hess's employer was error. Absent an explanation, the court cannot assess whether substantial evidence supports the ALJ's conclusion that Hess has the residual functional capacity to maintain full-time employment in the local and national economies. Accordingly, the court will remand the instant action to the ALJ to consider all of the evidence of an excessive absentee rate at steps four and five of the sequential evaluation process. See Miller v. Astrue, 815 F. Supp. 2d 848, 855-56 (E.D. Pa. 2011) (remanding for failure to discuss certain medical evidence that was inconsistent with the ALJ's finding that plaintiff had the residual functional capacity to perform light work).

## V.    <u>Conclusion</u>

For the foregoing reasons, the court will grant Hess's appeal and remand the case to the ALJ for further proceedings consistent with this memorandum.

An appropriate order will issue.


      /S/ CHRISTOPHER C. CONNER
      Christopher C. Conner, Chief Judge
      United States District Court
      Middle District of Pennsylvania


Dated:        March 7, 2014